UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELICIA ALLEN and THE
ESTATE OF ARTUROS
TURNER,

     Plaintiffs,

v.

CITY OF ECORSE, et al.,

     Defendants.

_____/

Case No. 2:19-cv-11040

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [21]

Plaintiffs Felicia Allen and the Estate of Arturos Turner brought the present civil rights complaint against the City of Ecorse and three of its police officers: Amjad Issa, Craig Cieszkowski, and Kevin Barkman. ECF 1. Plaintiffs claim that Defendants are liable under federal and state law for civil rights violations they committed during Turner's arrest. ECF 1. Before the Court is Defendants' summary judgment motion. ECF 21. The Court reviewed the briefs and finds that a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f). For the following reasons, the Court will grant summary judgment.

## BACKGROUND

In April 2017, in the middle of the night, Officers Cieszkowski and Issa drove a patrol car through a government housing area in Ecorse, Michigan. ECF 1, PgID 3; ECF 34-5, PgID 318–20. The area, according to the officers, was a known drug area. ECF 34-7, PgID 482. While they drove, the officers observed a "black male with a

1

white hoodie" standing "stationary on a moped[.]" ECF 34-5, PgID 319–320; ECF 34-7, PgID 480. The officers then observed that man "exchange[] something hand-to-hand with" another man in "dark clothing." ECF 34-5, PgID 319–320; ECF 34-7, PgID 480–81. Although the officers could not clearly see any drugs transfer between the men, based on their experience, they suspected a drug transaction. ECF 34-7, PgID 481–83; *see* ECF 34-5, PgID 327 ("We were trying to confirm that it was a narcotic transaction. We weren't able to say if it was or wasn't.").

After the "hand-to-hand" exchange, the man in the white hoodie drove off on the moped. ECF 34-5, PgID 331. As the officers followed in a patrol car, they saw the man drive through a stop sign, drive on sidewalks at thirty miles per hour, drive in front of other cars, drive into oncoming traffic, drive on lawns, cut off cars, and almost hit a pedestrian. *Id.* at 337–39; ECF 34-7, PgID 490. In response, the officers activated the patrol car's lights and sirens and tried to make a traffic stop, but the man on the moped did not stop. ECF 34-5, PgID 330–31, 342. Eventually, the man lost control of the moped, fell off, and fled the scene. *Id.* at 342–43.

When the man ran off, Officer Issa radioed the other officers about the suspect's description and then gave chase. ECF 34-7, PgID 494–95. While Officer Issa was running after the suspect, Officer Cieszkowski checked on the moped and then began to follow Officer Issa. ECF 34-5, PgID 344–45. Shortly after, Corporal Barkman responded to the crash scene. *Id.* at 344; ECF 34-6 PgID 413–14.

In the meantime, two River Rouge (Michigan) police officers quickly arrived on scene and one of them radioed the pursuing officers that he observed the suspect

(black male wearing a white hoodie) enter a residence. ECF 34-2, PgID 282; ECF 34-5, PgID 345–47; ECF 34-6, PgID 416. The other River Rouge officer then went around to the back of the house to make sure no one ran out. ECF 34-5, PgID 347; ECF 34-6, PgID 420–21. When Officer Issa arrived at the house, he went around to the side of the house to watch for anyone running out a backdoor or jumping through any windows. ECF 34-7, PgID 498–99.

Shortly after Officer Cieszkowski arrived at the house, a neighbor told Officer Cieszkowski that he saw the suspect enter the same house that the River Rouge officer saw the suspect enter. ECF 34-5, PgID 345–46. Officer Cieszkowski then approached the house and observed the suspect—wearing a white hoodie—looking out the bay windows from inside the house. *Id.* at 348. Officer Cieszkowski immediately identified the suspect as Arturos Turner from prior interactions with him. *Id.* After confirming with the River Rouge officer that Turner was the fleeing suspect he identified, Officer Cieszkowski instructed Turner to exit the house. *Id.* He specifically stated, "Mr. Turner, I can see you there, just come out." *Id.* at 351; *see* ECF 34-6, PgID 422.

But, in the "brief" time that the officers arrived on scene, the officers saw Turner run towards a flight of stairs leading to the basement. ECF 34-5, PgID 356; ECF 34-7, PgID 502 (explaining time interval). Thus, the officers made the quick "mutual decision" to enter the house and arrest Turner. ECF 34-5, PgID 354; ECF 34-6, PgID 421.

The officers then breached the door, entered the house, and promptly arrested Turner in the basement. ECF 34-5, PgID 357. In the end, Officer Cieszkowski arrested Turner for the felony of fleeing and eluding. ECF 34-2, PgID 281 (police report); ECF 34-5, PgID 360 (Officer Cieszkowski deposition).

In depositions, Officer Cieszkowski confirmed that they did not have probable cause to arrest Turner for the drug transaction. ECF 34-5, PgID 355. He admitted that the officers did not have consent or a warrant to enter the house. *Id.* at 352, 361. Officers Cieszkowski and Issa also explained in depositions that Turner's suspected drug activity in a high crime area, dangerous behavior while driving the moped, and fleeing and eluding all weighed into the decision to enter the house. *Id.* at 310–12; ECF 34-7, PgID 486–87. Officer Cieszkowski further noted that they had concerns about Turner destroying evidence. ECF 34-5, PgID 311.

The police report—written by Officer Cieszkowski—noted that when the officers arrested Turner in the basement, he was wearing different clothing. And when questioned, Turner claimed that he was sleeping in bed. ECF 34-2, PgID 281–82; ECF 34-3, 2:15–4:00. In Allen's deposition, she claimed that Turner did not own a white hoodie. ECF 34-8, PgID 536. She also claimed that despite being asleep, she knew that Turner was in bed with her that night and that he did not leave the house. *Id.* Last and unrelated to the facts of the incident, Turner died in December 2018. *Id.* at 529.

## LEGAL STANDARD

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party must identify specific portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party may not simply rest on the pleadings but must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences "in the light most favorable to the non-moving party." *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (citations omitted).

## DISCUSSION

In the motion for summary judgment, the officers asserted a qualified immunity defense, and that the undisputed facts show that there was no constitutional violation. ECF 21, PgID 144–51. The Court will first address the claims against the officers. After, the Court will address the *Monell* claim against the City.

I.   Unreasonable Search and Seizure Against the Officers

Once Defendants assert a qualified immunity defense, "Plaintiff[s] bear[] the burden of showing that [the officers] are not entitled to qualified immunity." *Maben*

*v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). Under qualified immunity, the Court must engage in a two-prong analysis and may ultimately decide which prong to analyze first. *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

First, the Court must "view the facts in the light most favorable to [Plaintiffs]" and "determine whether the officer committed a constitutional violation." *Barton v. Martin*, 949 F.3d 938, 947 (6th Cir. 2020) (citing *Burchet v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002)). For the second prong, "if there is a constitutional violation, the court must determine whether that constitutional right was clearly established at the time of the incident." *Id.* (citation omitted). Presently, the Court's analysis begins and ends with the first prong because the undisputed facts show that the officers did not violate Plaintiffs' constitutional rights.

Plaintiff asserted two Fourth Amendment violations: the officers' warrantless entry into the house, ECF 1, PgID 5–6, and Turner's arrest, *id.* at 6. The Court will address the arguments in turn.

*A. Warrantless Entry*

"A police officer's entry into a home without a warrant is presumptively unconstitutional under the Fourth Amendment." *Barton*, 949 F.3d at 938 (quoting *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002)). "Warrantless entries are permitted, however, where 'exigent circumstances' exist." *Ewolski*, 287 F.3d at 501 (internal citation omitted). "In general, exigent circumstances exist when real

immediate and serious consequences will certainly occur if a police officer postpones action to obtain a warrant." *Goodwin v. City of Painesville*, 781 F.3d 314, 329–30 (6th Cir. 2015) (internal quotation marks and quotation omitted). "Exigent circumstances are present as a matter of law (1) to engage in hot pursuit of a fleeing felon; (2) to prevent the imminent destruction of evidence; (3) to prevent a suspect from escaping; and (4) to prevent imminent harm to police or third parties." *United States v. Washington*, 573 F.3d 279, 287 (6th Cir. 2009) (citing *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)).

Whether exigent circumstances exist is "typically a question for the jury[,] . . . [but] the issue may be decided as a matter of law when a fact finder could only reach one conclusion on the undisputed facts." *Stricker v. Township of Cambridge*, 710 F.3d 350, 358 (6th Cir. 2013) (citing *Ewolski*, 287 F.3d at 501). To that end, the Court must determine "whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Ewolski*, 287 F.3d at 501 (citation omitted); *see also Stricker*, 710 F.3d at 358 ("[W]e must judge the reasonableness of officer action objectively.").

Here, the officers explained that the hot pursuit exception permitted their entry into Plaintiffs' house. ECF 21, PgID 147–49. In Officer Cieszkowski's deposition, he confirmed that the reasons they "gained entry in [to] the home" was "to effectuate an arrest . . . based upon the hot pursuit exception to the warrant requirement." ECF 34-5, PgID 361. Officer Cieszkowski also explained that the

officers had "suspected narcotic activity" and they "were pursuing [Turner] from an observed hand-to-hand in a high drug traffic area. And [they] . . . didn't know if he was destroying evidence" or "what his intentions were." *Id.* at 311, 354. As Officer Issa explained, the hand-to-hand transaction was "more than [an important fact]" because "when [Plaintiff] took off disregarding stop signs, that's when [they] initiated [a] stop. Originally it was just going to be an investigation, then it turned to him fleeing." ECF 34-7, PgID 488. Based on the facts known to the officers at the time, the Court finds that the officers properly relied on the hot pursuit exception when they entered the house.

The officers had reasonable suspicion that Turner was engaged in a drug transaction. An officer has reasonable suspicion that a person has been engaged in criminal activity when the officer is "able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). A "[r]easonable suspicion is based on the totality of the circumstances presented to the officer." *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012) (citing *Sokolow*, 490 U.S. at 8). The Sixth Circuit has held that "a hand-to-hand transaction consistent with a drug transaction" is "highly probative" in evaluating reasonable suspicion. *Id.* at 502. And the Sixth Circuit has found that an officer has reasonable suspicion when the officer observes an individual in a high crime area engage in "a hand-to-hand transaction consistent with a drug transaction[,]" and the individual has "unprovoked flight upon noticing the police[.]" *See id.* at 502–03

(citations omitted). Because those factors are all present here, the officers had reasonable suspicion of criminal activity. *See id.*

When Turner began to flee, they had probable cause to conclude that Turner committed a felony. *See Williams v. United States*, 632 F. App'x 816, 823 (6th Cir. 2015) ("In assessing probable cause, this court has held that if officers have reasonable suspicion of criminal activity, and the suspect flees when the officers attempt to stop him, the officers' reasonable suspicion ripens into probable cause."). And once the officers had probable cause, they also had a strong interest in pursuing the suspect into the home without a warrant. *Ingram v. City of Columbus*, 185 F.3d 579, 587–88 (6th Cir. 1999) (holding that so long as officers had probable cause to believe that a person had committed a drug felony, then exigent circumstances justified the officers' warrantless entry into a home).

Altogether, the officers were in an "immediate" and "continuous pursuit of the [suspect] from the scene of [the] crime[.]" *United States v. Saari*, 272 F.3d 804, 812 (6th Cir. 2001). The pursuit continued to the house because a responding River Rouge officer and a neighbor saw the suspect run into the house and informed the officers of their observations. ECF 34-5, PgID 345–50. What is more, Turner's evasive demeanor and appearance in the bay windows confirmed to the officers that Turner was in fact their suspect who had fled. *Id.* at 348–49 (describing Turner wearing a white hoodie and running towards the back house).

As the Sixth Circuit has explained, "[t]ypically, hot pursuit involves a situation where a suspect commits a crime, flees and thereby exposes himself to the public,

attempts to evade capture by entering a dwelling, and the emergency nature of the situation necessitates immediate police action to apprehend the suspect." *Cummings v. City of Akron*, 418 F.3d 676, 686 (6th Cir. 2005) (citations omitted). And here, the situation required immediate police action because the officers identified Turner as the man whom they saw commit other crimes. *See Smith v. Stoneburner*, 716 F.3d 926, 932 (6th Cir. 2013) (citing *Ingram*, 185 F.3d at 587).

Plaintiffs' arguments to support a finding that the officers committed a constitutional violation are unpersuasive. First, Plaintiffs claimed that there is an issue of material fact because—on the basis of two pieces of evidence—Turner was sleeping when the chase occurred and thus the officers falsely arrested Turner. ECF 34, PgID 255; *see also* ECF 34-3, 2:15–4:00 (body camera video); ECF 34-8, PgID 535–36 (Allen's deposition). Both pieces of evidence presumably raise a dispute about whether police misidentified Turner after entering the house. But Plaintiffs' argument misses the mark.

The issue is "whether the facts are such that an objectively reasonable officer confronted with the same circumstances could reasonably believe that exigent circumstances existed." *Ewolski*, 287 F.3d at 501 (citation omitted); *see also Stricker*, 710 F.3d at 358 ("[W]e must judge the reasonableness of [an] officer['s] action objectively."). And Plaintiffs have offered no evidence that shows the officers acted unreasonably *before* the officers entered the house.[1] Thus, the Court must decide the

---

[1] Plaintiffs accurately explained that the officers did not arrest Turner for any drug related charges. ECF 34, PgID 274; ECF 34-5, PgID 355; ECF 34-7, PgID 487. But as the officers explained, the factors such as suspected drug activity in a known drug

issue "as a matter of law" because "a fact finder could only reach one conclusion on the undisputed facts": that the officers acted reasonably. *Stricker*, 710 F.3d at 358 (citing *Ewolski*, 287 F.3d at 501). In other words, Plaintiff never established that the officers were aware of the alleged facts explained in Allen's deposition or Turner's claim that he was asleep. Without that showing, the evidence is irrelevant to determine whether exigent circumstances existed.

Second, Plaintiffs argued that *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984), supports their case since both Turner and Welsh were apparently "being investigated for alleged traffic offenses[.]" ECF 34, PgID 262. But Plaintiff misapplied *Welsh*. As the Supreme Court explained, "nothing in [*Welsh*] establishes that the seriousness of the crime is equally important *in cases of hot pursuit*." *Stanton v. Sims*, 571 U.S. 3, 9 (2013) (per curiam) (emphasis in original). Indeed, the gravity of the underlying offense here is irrelevant because the offenses, fleeing and eluding, were felonies— not misdemeanors. Mich. Comp. Laws §§ 257.626, 333.7403, and 750.479a(1), (2); *see Cummings*, 418 F.3d at 686 (6th Cir. 2005) ("[I]f there is no underlying felony, the 'hot pursuit of a fleeing felon' exception to the warrant requirement is untenable.").

Third, Plaintiffs also believed that *Coffey v Carroll*, 933 F.3d 577 (6th Cir. 2019), helps their case because they believe the facts are identical to what happened here. ECF 34, PgID 262–63, 267. But that belief is incorrect for two simple reasons. First, there was no hot pursuit in *Coffey*, 933 F.3d at 586. And separately, even if this

---

area, several traffic violations, and flight from the police supported the decision to enter the house without a warrant. ECF 34-5, PgID 310–12; ECF 34-7, PgID 486–87.

case were similar and the Court were to find a constitutional violation, the Sixth Circuit decided *Coffey* two years after Plaintiff's arrest, and the officers would be entitled to qualified immunity under the second prong analysis because that analysis focuses on whether "the right was clearly established *at the time of the alleged violation*." *Campbell v. City of Springboro*, 700 F.3d 779, 786 (6th Cir. 2012) (emphasis added).

In all, there is no dispute of material fact and the Court must find that the officers' entry into the house was constitutional because the officers were in hot pursuit of Turner.

### B. Arrest for Fleeing and Eluding

Though the Court determined that officers could enter the house without a warrant, Plaintiffs asserted a constitutional violation in Turner's very arrest. Thus, the Court must now consider whether the officers had probable cause to arrest Turner for fleeing and eluding under Mich. Comp. Laws § 750.479a(1).

"The existence of probable cause . . . depends on 'whether, at the moment the arrest was made, . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed . . . [the] offense." *United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "A probable cause determination is based on the 'totality of the circumstances,' and must take account of 'both the inculpatory *and* exculpatory

evidence.'" *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (emphasis in original) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)).

"An eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999); *see also Wesley*, 779 F.3d at 429–30 ("Probable cause is created only by eyewitness allegations that are *reasonably trustworthy*[.]") (internal quotations omitted) (emphasis in original) (quoting *Logsdon v. Hains*, 492 F.3d 334, 342 (6th Cir. 2007)). Most importantly, "the probable-cause determination must be based on the information that the arresting officer had when he made the arrest, rather than with the 20/20 vision of hindsight." *Courtright v. City of Battle Creek*, 839 F.3d 513, 521 (6th Cir. 2016) (citation omitted).

Generally, "the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995) (citation omitted). "When no material dispute of fact exists, probable cause determinations are legal determinations that should be made by a court." *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005) (citation omitted).

Here, Plaintiffs contended that because "Turner was never identified prior to the unlawful entry into his home[, then] probable cause for any crime, at most is a question of fact for the jury." ECF 34, PgID 274. But that argument ignores the

testimony from Officer Cieszkowski that the officers relied on three identifications of Turner as the fleeing suspect before entering the house.

In particular, a River Rouge officer and a neighbor both independently identified the fleeing suspect who ran into the house. ECF 34-5, PgID 345–46. And when Officer Cieszkowski arrived at the house, he saw the fleeing suspect through the house's bay windows. *Id.* at 347–48. Based on past interactions with Turner, Officer Cieszkowski immediately identified the fleeing suspect as Turner. *Id.* at 348. Indeed, Officer Cieszkowski confirmed with the River Rouge officer that Turner was the fleeing suspect he identified. *Id.* ("I said are you sure that's the guy on the thing, he said, yep, that's him, because he was the closest to him as he was in a foot pursuit with him"). Because of the corroborating identifications, the eyewitness accounts are "reasonably trustworthy[.]" *Wesley*, 779 F.3d at 429 (noting that sometimes a "mere allegation . . . falls short of creating probable cause absent some corroborating evidence of wrongdoing.") (quotation and citation omitted).

At most, Plaintiffs seemed to suggest in their brief that the officers misidentified Turner as the suspect because Turner was not wearing a white hoodie at the time of his arrest, and Turner had claimed that he was asleep. *See* ECF 34, PgID 257–58. But there are no facts to support the misidentification theory. For one, there are no facts to suggest that the River Rouge officer and Officer Cieszkowski did not match Turner to the fleeing suspect's description before entering the house. And there are no facts to suggest that a person other than Turned matched the fleeing

suspect's description and was inside the house or had fled the house after the River Rouge officer and the neighbor saw the suspect run inside.

Instead, the misidentification theory stems from Allen's claims that Turner did not own a white hoodie and she knew that Turner was asleep with her that night and that Turner did not leave the house. ECF 34-8, PgID 536. But those facts—if true—were uncorroborated or unapparent to the officers when the arrest occurred. *Courtright*, 839 F.3d at 521 ("The probable-cause determination must be based on the information that the arresting officer had when he made the arrest[.]") (citation omitted). Granted, Turner did assert to the officers after his arrest that he had been asleep. ECF 34-3, (2:15–4:00). But the statements in no way eliminated probable cause because the overwhelming evidence identified Turner as the suspect. *See United States v. Terry*, 522 F.3d 645, 649 (6th Cir. 2008) ("[P]robable cause does not require 'near certainty,' only a 'fair probability.'") (quoting *United States v. Martin*, 289 F.3d 392, 400 (6th Cir. 2002)).

To that end, because the officers had the house surrounded and no evidence suggested that anyone escaped from the house, the officers' identification of Turner as the fleeing suspect is even more "reasonably trustworthy[.]" *Wesley*, 779 F.3d at 429–30 (emphasis in original) (quotation omitted). In all, based on the totality of the circumstances and on the information that the officers had when arresting Turner, no material dispute of fact shows that the officers did not have probable cause to arrest him for fleeing and eluding police. The Court will therefore grant summary

judgment to the officers on the § 1983 claim because no constitutional violation occurred, and the officers are entitled to qualified immunity.

II.    State Law Claims Against the Officers for False Arrest and Imprisonment

Next, Plaintiffs asserted intentional tort claims of false arrest and imprisonment against the officers. ECF 1, PgID 8–9. Under Michigan law, if the officers had probable cause to arrest Turner, then "a claim of false arrest or false imprisonment cannot be sustained [because] the arrest was legal." *Odom v. Wayne Cnty.*, 482 Mich. 459, 482 (2008). Because the Court found that the officers had probable cause to arrest Turner for fleeing and eluding, the arrest was legal, and the state law claims fail. Defendants are entitled to qualified immunity and summary judgment on the state law claims.

III.    *Monell* Liability for the City of Ecorse

In brief, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000)). Because the Court found there was no underlying constitutional violation, the Court must dismiss the *Monell* claims against the City.

IV.    State Law Claims against the City of Ecorse

Although the City asserted it was immune to Plaintiff's state tort claims, ECF 21, PgID 151–52, Plaintiffs never asserted in the complaint whether they were pursuing state tort claims against the City, ECF 1, PgID 8–9. The Court therefore

finds no reason to issue an advisory opinion on whether the alleged immunity applies

to unasserted claims.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion for

summary judgment [21] is **GRANTED**.

This is a final order that closes the case.

**SO ORDERED.**


                                    s/ Stephen J. Murphy, III
                                    STEPHEN J. MURPHY, III
                                    United States District Judge

Dated: February 16, 2021

I hereby certify that a copy of the foregoing document was served upon the parties
and/or counsel of record on February 16, 2021, by electronic and/or ordinary mail.

                                    s/ David P. Parker
                                    Case Manager